OPINION
 

 ADELE HEDGES, Chief Justice.
 

 EMSL Analytical, Inc. appeals from the denial of its application for temporary injunction in its lawsuit against Diane Younker. EMSL alleges that Younker, its former employee, violated a covenant not to compete and a nondisclosure agreement when she went to work for one of its customers. Because EMSL failed to show that it would probably suffer imminent and irreparable injury in the absence of a temporary injunction, we affirm.
 

 Background
 

 EMSL provides environmental testing services to its customers. Younker went to work for EMSL in 2002 as a Microbiology Laboratory Manager. Prior to starting employment, EMSL required Younker to sign a covenant not to compete and nondisclosure agreement. The operative paragraph of this document reads as follows:
 

 The Company promises to provide Employee with some Confidential Information and/or Trade Secrets of the Company. Employee agrees not to disclose, or aid and abet the disclosure to any person of Confidential Information or Trade Secrets of the Company. To enforce Employee’s promise not to disclose such Confidential Information or Trade Secrets, Employee agrees that during Employee’s employment with the company and for a period of twelve (12) months after termination of Employee’s employment, no matter how occasioned (or for a period of twelve (12) months after the entry of a final judgment of injunction in the event the Company seeks injunctive enforcement of this covenant), Employee will not, either for Employee’s own purposes or as an employee of or for the benefit of any other entity or person, directly or indirectly:
 

 a) Engage or have any interest in any activity, venture or environmental laboratory involving asbestos analysis, lead analysis and environmental microbiology within the states of Texas and Louisiana;
 

 b) Work for any customer of the Company within the states of Texas and Louisiana....
 

 EMSL claims that Younker was subsequently given access to three types of confidential information: (1) a customer information database, (2) a laboratory quality assurance manual, and (3) a laboratory standard operating procedures manual.
 

 In 2003, EMSL undertook a microbiology testing project for Lockheed Martin Space Operations. The project involved the testing of equipment to be used on the International Space Station. Younker supervised the project and reported the results to Lockheed. EMSL billed Lockheed $14,750 for the project. In 2004, Younker resigned from EMSL and began working for Lockheed at the Johnson Space Center. Her uncontroverted testimony was that she has not disclosed EMSL’s confidential information to Lockheed or anyone else. She further stated that her job responsibilities were completely different at the two companies: at EMSL, she provided analytical services on samples, and at Lockheed, she provides
 
 *681
 
 scientific support to engineers relating to both microbiological and non-microbiological equipment. She stated that Lockheed does not have its own microbiological laboratory and that, although a separate department of NASA does and she has been there to collect data from the laboratory, she has never given NASA any advice regarding its laboratory.
 

 EMSL sued Younker, alleging breach of contract, breach of fiduciary duty, and misappropriation of trade secrets, and requesting a temporary restraining order and temporary and permanent injunctions. The trial court initially granted a TRO but, after an evidentiary hearing, subsequently denied the application for a temporary injunction. This interlocutory appeal is from the denial of the temporary injunction.
 
 See
 
 Tex. Civ. Prac.
 
 &
 
 Rem.Code Ann. § 51.014(4) (Vernon Supp.2004).
 
 [1]
 
 In a single issue, EMSL contends that the trial court abused its discretion in denying the temporary injunction.
 

 Standard of Review
 

 EMSL initially questions whether the requirements for a temporary injunction involving a covenant not to compete are governed by traditional common law rules of equity or by the Covenants Not to Compete Act. Tex. Bus.
 
 &
 
 Com.Code Ann. §§ 15.50-15.52 (Vernon 2002);
 
 see also Light v. Centel Cellular Co. of Tex.,
 
 883 S.W.2d 642, 643-44 (Tex.1994) (holding the Act preempts the common law relating to enforcement of covenants not to compete). We agree with the First and Ninth Courts of Appeals, in holding that the Act does not preempt the common law relating to
 
 temporary
 
 injunctions.
 
 Wright v. Sport Supply Group, Inc.,
 
 137 S.W.3d 289, 293 n. 1 (Tex.App.—Beaumont 2004, no pet.);
 
 Cardinal Health Staffing Network, Inc. v. Bowen,
 
 106 S.W.3d 230, 236-240 (Tex.App.—Houston [1st Dist.] 2003, no pet.) (en banc).
 
 [2]
 
 As explained in detail in
 
 Cardinal Health,
 
 the clear language of the Act expresses an intention to govern only final remedies. 106 S.W.3d at 237-39. By its very nature, a temporary injunction is not a final remedy. Accordingly, we look to the common law rules governing temporary injunctions in determining whether the court below properly denied the application.
 

 The purpose of a temporary injunction is to preserve the status quo of
 
 *682
 
 the litigation’s subject matter pending a trial on the merits.
 
 Butnaru v. Ford Motor Co.,
 
 84 S.W.3d 198, 204 (Tex.2002). To obtain a temporary injunction, the applicant must plead and prove: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim.
 
 Id.
 
 The decision to grant or deny a temporary injunction rests within the trial court’s sound discretion.
 
 Id.
 
 A reviewing court should not reverse an order on a temporary injunction unless the trial court’s action was so arbitrary that it exceeded the bounds of reasonable discretion. Id. When a consideration of the evidence is required, we view it in the light most favorable to the trial court’s order, indulging every reasonable inference in its favor.
 
 Amalgamated Acme Affiliates, Inc. v. Minton,
 
 33 S.W.3d 387, 392 (Tex.App.—Austin 2000, no pet.). When, as here, the trial court does not make findings of fact or conclusions of law, we must uphold the court’s order on any legal theory supported by the record.
 
 Universal Health Servs., Inc. v. Thompson,
 
 24 S.W.3d 570, 577 (Tex.App.—Austin 2000, no pet.).
 

 Analysis
 

 We focus our attention on the third required element: that the applicant prove a probable, imminent, and irreparable injury in the interim.
 
 See Butnaru,
 
 84 S.W.3d at 204. EMSL appears to identify two possible reasons for needing a temporary injunction: (1) to prevent the possible release of their confidential information and (2) to preserve the possibility that Lockheed might need EMSL’s services in the future.
 

 We begin by noting that this is not the typical covenant not to compete case where a former employer goes to work for a competitor and tries to take customers away.
 
 See, e.g., Wright,
 
 137 S.W.3d at 293 (holding probable injury was shown where former employee acknowledged selling products to former employer’s customers). While there was evidence that Younker was violating the noncompete clause by working for a former customer of EMSL’s, the agreement itself states that the sole purpose of the noncompete clause was to enforce the nondisclosure clause.
 
 [3]
 
 However, there was no evidence offered to show that Younker was currently violating the nondisclosure clause or that there was any likelihood that she would in the future.
 
 [4]
 

 Jason Dobranic, EMSL’s regional manager, testified that he had no knowledge of Younker disclosing any confidential information or of whether she worked in a microbiology lab for Lockheed. He further admitted that he had no knowledge of what Lockheed might ask Younker to do, but that there was a “potential” that Lockheed could ask her to do things that would involve EMSL’s confidential information. He said that he was “concerned” that EMSL could suffer irreparable harm if Younker was not prevented from working for Lockheed during the pendency of the lawsuit, and he could “envision” a situation in which Younker might confer some of EMSL’s confidential information to a laboratory at NASA. He also stated that
 
 *683
 
 EMSL’s project for Lockheed was a onetime assignment but that there was a “potential” for future special projects.
 

 Younker testified that she did not take any confidential information with her when she left EMSL and that she has not disclosed EMSL’s confidential information to Lockheed, NASA, or anyone else. She further stated that her job responsibilities were different at the two companies and that she does not work in a microbiology lab for Lockheed. It was undisputed that Lockheed is not a competitor of EMSL.
 
 [5]
 

 Based on the evidence presented, EMSL established a theoretical possibility that Younker could take Lockheed away as a customer by doing in-house for them what they had on one occasion paid EMSL to do. However, there is no evidence showing that she is doing such work for Lockheed or has, will, or ever would do such work for Lockheed. EMSL also established a theoretical possibility that Younker could divulge EMSL’s confidential information to Lockheed or some other entity, but again, there is no evidence that she has done this or likely will do this. Indeed, Younker’s uncontroverted testimony refuted both of EMSL’s theoretical reasons for needing a temporary injunction. Further, the evidence supports the conclusion that her job responsibilities at Lockheed would not require her to use EMSL’s confidential information.
 
 See Cardinal Health,
 
 106 S.W.3d at 242-43 (holding party failed to demonstrate probable injury from violation of noncompete clause and possible violation of nondisclosure clause where former employee did not need to use former employer’s confidential information in new job);
 
 cf. Rugen v. Interactive Bus. Sys., Inc.,
 
 864 S.W.2d 548, 552 (Tex.App.—Dallas 1993, no writ) (finding temporary injunction was proper where defendant held confidential information of plaintiff and was in direct competition with plaintiff). At most, the testimony of EMSL’s regional manager established only a fear of possible injury, and that contingency is not sufficient to support issuance of a temporary injunction.
 
 See Frey v. DeCordova Bend Estates Owners Ass’n,
 
 647 S.W.2d 246, 248 (Tex.1983);
 
 Harbor Perfusion, Inc. v. Floyd,
 
 45 S.W.3d 713, 716 (Tex.App.—Corpus Christi 2001, no pet.).
 
 [6]
 

 
 *684
 
 Viewing the evidence in the light most favorable to the trial court’s order, we hold that EMSL has failed to establish that it faced “probable, imminent, and irreparable injury” in the absence of a temporary injunction.
 
 See Butnaru,
 
 84 S.W.3d at 204. Consequently, the trial court did not abuse its discretion in denying the application for temporary injunction. EMSL’s sole issue is overruled.
 

 The trial court’s judgment is affirmed.
 

 [1]
 

 . Younker suggests that the trial court actually denied both temporary and permanent injunctions. Indeed, the court's order states "came to be heard [EMSL’s] Application for Temporary and Permanent Injunction.... [T]he court is of the opinion that said Application shall be denied.” (emphasis omitted). However, the record is clear that the court included the word "Permanent” in this order solely because that word was in the title of EMSL's pleading. In granting an initial temporary restraining order (based on the same pleading), the court simultaneously set a hearing on the temporary injunction. The court opened that hearing by stating "[wje’re here today on a request for a temporary injunction,” and at the close of the hearing, he stated "[t]he motion for Temporary Injunction is denied.” The court’s docket sheet also reflects only that it denied the temporary injunction. We further note that it would generally be improper for a trial court to rule on a permanent injunction prior to trial on the merits.
 
 State v. Gibson’s Distrib. Co.,
 
 436 S.W.2d 122, 124 (Tex.1968).
 

 [2]
 

 . In one opinion, the Fifth Court of Appeals appeared to hold the opposite, that the Act does govern temporary as well as permanent injunctions.
 
 Hilb, Rogal & Hamilton Co. of Tex. v. Wurzman,
 
 861 S.W.2d 30, 33-35 (Tex.App.—Dallas 1993, no writ) (stating that the Act supercedes equitable temporary injunction requirements but holding that appellant waived application of the statute by failing to raise it in the trial court). However, in a subsequent opinion, the Fifth Court cited
 
 Cardinal Health
 
 and expressly reserved the question of whether the Act superceded the equitable rules governing temporary injunctions.
 
 CSCS, Inc. v. Carter,
 
 129 S.W.3d 584, 588 n. 1 (Tex.App.—Dallas 2003, no pet.).
 

 [3]
 

 . We take no position at this juncture on whether a valid injunction could issue to prevent a former employee from working for a former customer.
 

 [4]
 

 . Although not specifically raised by EMSL, it has been held that when a request for temporary injunction relates to a covenant not to compete, proof of a continuing breach of the covenant by a highly trained employee gives rise to a presumption of probable injury.
 
 See Unitel Corp. v. Decker,
 
 731 S.W.2d 636, 641 (Tex.App.—Houston [14th Dist.] 1987, no writ). However, this presumption is certainly a rebuttable one.
 
 Cardinal Health,
 
 106 S.W.3d at 236. To the extent this presumption applies to this case, we find that the offered evidence rebutted it.
 

 [5]
 

 . EMSL states several times in its briefing that Younker admitted that she is currently using knowledge she gained as a result of EMSL’s procedures and methodologies. However, her testimony is very clear that although she uses knowledge she obtained while working for EMSL, she does not use any confidential information that she became privy to while at EMSL.
 

 [6]
 

 . The cases EMSL primarily relies upon are easily distinguishable. EMSL contends that under
 
 State v. Texas Pet Foods, Inc.,
 
 591 S.W.2d 800, 804 (Tex.1979), the mere fact that Younker continues to work for Lockheed is sufficient to mandate a temporary injunction. Texas Pet Foods involved a permanent injunction specifically authorized under the Texas Clean Air, Water Quality, and Render-ers’ Licensing Acts against continuing violations of those acts.
 
 Id.
 
 at 802-03. The court held that over a year’s worth of continuing, daily violations was sufficient to show a present or threatened violation as required by the acts for an injunction to issue.
 
 Id.
 
 at 803-05. In the case before us, EMSL does not claim that Younker's violation of the noncompete clause will probably cause it harm; EMSL instead claims only that the potential violation of the nondisclosure clause will probably cause it harm. Thus, Younker’s alleged continued violation of the noncompete clause alone cannot justify a temporary injunction.
 

 EMSL further argues that in order to demonstrate harm under
 
 Universal Health,
 
 24 S.W.3d 570, it needs only to show that an award of damages would be inadequate compensation. While such proof may be sufficient to show that the possible harm was
 
 irreparable,
 
 nothing in
 
 Universal Health
 
 relieves an applicant of the burden of showing
 
 probable
 
 and
 
 imminent
 
 harm.
 
 Id.
 
 at 577-78. Indeed, in that case, the defendants, investors in a hospital, had decided to shut the hospital
 
 *684
 
 down, and the plaintiffs, doctors at the hospital, showed that shutdown of the hospital would probably cause them imminent and irreparable injury; thus, the temporary injunction was properly granted.
 
 Id.
 
 at 574, 578.