Petition for Writ of Mandamus Conditionally Granted; Reversed and
Remanded, and Opinion filed August 4, 2009








 

Petition
for Writ of Mandamus Conditionally Granted; Reversed and Remanded, and Opinion
filed August 4, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00204-CV

____________

 

NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LTD.
and NORTH CYPRESS OPERATING COMPANY G.P., LLC, Appellants

 

v.

 

MATTHEW ST. LAURENT, M.D., Appellee

 



 

On Appeal from the
333rd District Court

Harris County,
Texas

Trial Court Cause
No. 2007-76983

 



____________

 

NO. 14-09-00289-CV

____________

 

IN RE NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY,
LTD. and NORTH CYPRESS OPERATING COMPANY G.P., LLC, Relators

 



 

Original
Proceeding

Writ of Mandamus

 










O P I N I
O N

This
consolidated appellate proceeding, consisting of an accelerated appeal and
petition for writ of mandamus, arises from a doctor=s attempts to prevent the sale of his
profits-only ownership interest in a hospital=s limited partnership.  In the
accelerated appeal, the partnership challenges a temporary injunction
preventing the sale or transfer of the doctor=s shares.  The trial court that
issued the temporary injunction also ordered the partnership to deposit the
doctor=s future distributions into the court=s registry, prompting the partnership
to seek mandamus relief from this Court.

The
doctor has not shown he has an inadequate remedy, at law, that is, that money
damages would result in inadequate compensation for the loss of his
profits-only share in the partnership.  Thus, the record does not support a
necessary finding that the doctor would suffer an irreparable injury but for
the temporary injunction.  Accordingly, we reverse the trial court=s order granting a temporary
injunction.  We further hold that the record does not support a conclusion that
disputed funds are likely to be lost or depleted, a necessary finding before a
trial court may order a party to deposit money into the court=s registry.  Therefore, we
conditionally grant the petition for writ of mandamus.

                                                                             I.

Background








In
January 2004, Matthew St. Laurent, M.D., the appellee/real party in interest,
purchased four limited partnership shares, termed Aunits,@ in North Cypress Medical Center
Operating Company, Ltd. (the Apartnership@).[1]  Under the
terms of the limited partnership agreement (the AAgreement@), St. Laurent was permitted to share
in the partnership=s net income and occasional distributions but had no right to
manage or control the partnership=s operation, business, or
activities.  The Agreement also provided that the partnership, Aat its sole option,@ could sell St. Laurent=s shares without his consent for a
variety of reasons, including his breach of the Agreement.

In
November 2007, the partnership notified St. Laurent that he had breached the
Agreement=s non-competition clause and that it intended to sell his shares.  He
responded by filing suit against North Cypress for breach of contract, conversion,
breach of fiduciary duty, and conspiracy to commit breach of fiduciary duty. 
He sought money damages in excess of $250,000, and also asked for the equitable
remedy of an injunction preventing the sale of his shares.

In
February 2009, the trial court granted St. Laurent=s request for a temporary injunction,
thereby preventing the partnership from transferring or selling his shares. 
That ruling prompted North Cypress to file this accelerated appeal.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(4) (Vernon 2008).  In
addition, the trial court ordered North Cypress to pay into the court=s registry St. Laurent=s portion of any future partnership
distributions.  That order forms the basis for North Cypress=s petition for writ of mandamus.

                                                                            II.

                                                   Temporary Injunction

In the
accelerated appeal, which we address first, North Cypress contends St. Laurent
was not entitled to a temporary injunction because he failed to show that he
would suffer an irreparable injury in the absence of injunctive relief.  We
agree.








The
purpose of a temporary injunction is to preserve the status quo of a
lawsuit=s subject matter pending a full trial
on the merits.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex.
2002).  However, a temporary injunction is an extraordinary remedy that does
not issue as a matter of right.  Id.  Instead, the applicant bears the
burden of pleading and proving that he has (1) a cause of action against the
defendant, (2) a probable right to the relief sought, and (3) a probable,
imminent, and irreparable injury in the interim.  Id.  

The
party seeking injunctive reliefChere, St. LaurentCcarries the burden to demonstrate an
irreparable injury.  See Reach Group, L.L.C. v. Angelina Group, 173
S.W.3d 834, 838 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  An injury is considered
irreparable if the party cannot be adequately compensated in damages, or if
those damages are incapable of calculation.  Butnaru, 84 S.W.3d at 204; Reach
Group, L.L.C., 173 S.W.3d at 838.  Generally, however, courts do not
enforce contractual rights by injunction, because an applicant who may recover
breach-of-contract damages can rarely establish an irreparable injury and
accompanying inadequate legal remedy.  Butnaru, 84 S.W.3d at 211; Reach
Group, L.L.C., 173 S.W.3d at 838.

We
review the grant or denial of a temporary injunction for an abuse of
discretion.  EMSL Analytical, Inc. v. Younker, 154 S.W.3d 693, 696 (Tex.
App.CHouston [14th Dist.] 2004, no pet.). 
A trial court does not abuse its discretion if it bases its decision on
conflicting evidence in the record.  Law v. William Marsh Rice Univ.,
123 S.W.3d 786, 792 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).  With respect to the
resolution of factual issues, the appellant must establish the trial court
reasonably could have reached only one decision.  Emeritus Corp. v.
Ofczarzak, 198 S.W.3d 222, 225B26 (Tex. App.CSan Antonio 2006, no pet.).  To the
extent that we must consider the evidence to resolve this appeal, we review the
evidence in the light most favorable to the trial court=s order, indulging reasonable
inferences in its favor.  See EMSL Analytical, Inc., 154 S.W.3d at 696. 
Therefore, we will not disturb the trial court=s ruling if some evidence in the
record reasonably supports the decision.  Butnaru, 84 S.W.3d at 211. 
However, a trial court abuses its discretion if it misapplies the law to the
established facts of the case.  Law, 123 S.W.3d at 792.








Here,
St. Laurent contends that his partnership shares are Aunique@ such that money damages cannot fully
compensate him for their loss.  In the alternative, he suggests that the amount
of such damages cannot be adequately measured.  We will address each of these
contentions, in turn.

A.        AUniqueness@ of Profits-Only Limited Partnership
Share

Generally,
money damages may be inadequate to compensate an injured party for the loss of
property deemed to be legally Aunique@ or irreplaceable.  See, e.g., Patrick v. Thomas, No.
2-07-339-CV, 2008 WL 1932104, at *3 (Tex. App.CFort Worth May 1, 2008, no pet.)
(mem. op.) (discussing owner=s sentimental, nonmonetary attachment to horses).  The Auniqueness@ rule is most commonly applied when
the disputed property involves real estate.  See Lavigne v. Holder, 186
S.W.3d 625, 629 (Tex. App.CFort Worth 2006, no pet.); In re Stark, 126 S.W.3d
635, 640 (Tex. App.CBeaumont 2004, orig. proceeding [mand. denied]) (AWe agree . . . that every piece of
real estate is unique and that its uniqueness may, in an injunction case,
constitute some evidence of an irreparable injury.@).

Apparently
hoping to invoke this common real-estate principle, St. Laurent claims that his
partnership shares should be treated as an interest in real estate because one
of the purposes of the partnership is to own and maintain a hospital, North
Cypress Medical Center.  We disagree.  First, the limited partners, including
St. Laurent, do not own the hospital real estate; only the partnership does. 
Second, under the Agreement, St. Laurent has no right to control the management
or operation of the hospital.  Instead, as a limited partner, St. Laurent=s only interest in the hospital real
estate is confined to whatever net income may be generated from the hospital=s business.  Therefore, we are not
persuaded that St. Laurent=s attenuated connection to the physical plant of the hospital
is sufficient to constitute a Aunique@ interest in real estate.  Cf. Lavigne, 186 S.W.3d at
629 (upholding land purchaser=s right to injunctive relief to prevent foreclosure on
real estate).








Alternatively,
St. Laurent suggests that his shares are unique because they are
irreplaceable.  As he notes, the partnership=s shares are not publicly traded and,
under the terms of the Agreement, additional limited partners may not be
admitted without the general partner=s consent.  Thus, St. Laurent is
correct that, once he loses his shares, he cannot simply replace them with
other partnership shares.  However, he has not shown that money damages cannot
take their place.  That is, a subjective desire to keep one=s shares does not, by itself, render
money damages an inadequate substitute.  See Pesch v. First City Bank of
Dallas, 637 F. Supp. 1539, 1547 (N.D. Tex. 1986).  This is particularly
true here where, unlike the shares discussed in Pesch, St. Laurent=s ownership interest gives him no
voice in the control or management of the partnership.  See Pesch, 637
F. Supp. at 1546.  Instead, the Agreement provides:

The General Partner shall conduct, direct and exercise full control
over all activities of the Partnership.  Except as otherwise expressly provided
herein, all management powers over the business and affairs of the Partnership
shall be exclusively vested in the General Partner, and the Limited Partners
shall not have any right of control or management power over the business and
affairs of the Partnership. . . . [T]he General Partner shall have full
power and authority to do all things deemed necessary or desirable by it to
conduct the business of the Partnership without the consent or approval of the
Limited Partners[.][2]

 

The undisputed evidence
in the record indicates that St. Laurent is at risk for loss of only his
proportionate share in the partnership=s net income and any future
distributions.  Both of these items represent an interest in money. 
Therefore, St. Laurent has not shown that breach-of-contract damages would be
inadequate to compensate him for any such monetary losses.

B.        Calculation of Damages








Alternatively,
St. Laurent acknowledges that damages may compensate for the loss of
partnership shares but argues that, in this case, his damages are incapable of
mathematical calculation.  See Reach Group, L.L.C., 173 S.W.3d at 838. 
He reasons that, because no ready market exists for the sale and purchase of
these privately held shares, the value of his ownership interest cannot be
readily ascertained.  However, the record does not support that argument.

The
Agreement contains numerous provisions relative to the value of each limited
partner=s ownership interest in the
partnership.  Under its terms, the partnership must establish and maintain a ACapital Account@ as to each partner, reflecting the
current value of his ownership interest.  That amount incorporates, among other
things, (1) the cash amount or fair market value of all shares owned by the
partner, (2) his proportionate share of the partnership=s net income or loss, (3) the amount
of partnership liabilities attributable to him, and (4) the cash amount or fair
market value of all distributions of cash or property made to him.  In
addition, the Agreement contains several other provisions affecting the value
of each partner=s Capital Account, including interest, value following
transfer of a partnership interest, and the effect of loans to the
partnership.  In the event a partner=s shares are to be sold, the
Agreement specifies, through mathematical formulas, the exact consideration to
be paid.

St.
Laurent acknowledges that he can determine the value of his current
ownership interest.  In fact, during the temporary-injunction hearing, he
testified about the value of his Capital Account as of a specific date shortly
before the hearing.  However, he claims that his future damages cannot
be measured once he is divested of his shares, at which point he will no longer
be eligible to receive distributions or a proportionate share of net income. 
He notes that, under the Agreement, the general partner may declare
distributions in its sole discretion, Afrom time to time.@  Drawing from that fact, St. Laurent
argues in his brief that A[t]here is nothing in the record that establishes any
reliable method of affirmatively establishing the value of future
distributions.@








St.
Laurent=s argument misstates the burden of
proof.  In a temporary-injunction hearing, the burden is on the applicant to
prove that his damages cannot be calculated, not on the non-movant to disprove
that notion.  See Reach Group, L.L.C., 173 S.W.3d at 838.  After
reviewing the record, we conclude that St. Laurent failed to carry that burden
because he produced no evidence, either express or implicit, that his future
damages are simply too speculative to be calculated.[3]

To the
contrary, expert witnesses frequently offer opinions about the value of a
partnership interest,[4] even when, as
here, some unspecified future revenue source remains pending.  See, e.g.,
Von Hohn v. Von Hohn, 260 S.W.3d 631, 637B38 (Tex. App.CTyler 2008, no pet.) (approving
expert testimony as to value of partnership interest in a law firm, even though
some of the firm=s lawsuits had not yet settled or even been filed). 
That task calls upon expert witnesses, out of necessity, to make reasonable
assumptions about a litigant=s future damages resulting from some intervening event, such
as the defendant=s alleged wrongdoing.  See, e.g., Columbia Med. Ctr. of
Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 254B55 (Tex. 2008) (requiring expert=s future-damage calculations to
adhere to reasonable assumptions not inconsistent with undisputed facts); Checker
Bag Co. v. Washington, 27 S.W.3d 625, 638B39 (Tex. App.CWaco 2000, pet. denied) (upholding
future-damages testimony, based on reasonable assumptions, by expert
economist).  In that regard, this case is not unlike any other case involving
the calculation of future damages.  See Hughes v. Houston Nw. Med. Ctr.,
Inc., 680 S.W.2d 838, 842 (Tex. App.CHouston [1st Dist.] 1984, writ ref=d n.r.e.) (ADamages must be established with
reasonable certainty, but the amount of damages need not be certain, or future
damages would never be recoverable.@) (citations omitted).








Here,
although the Agreement introduces some degree of uncertainty about the precise
timing of future distributions, it expressly requires the partnership to Ause reasonable efforts to distribute annually
at least an amount of Available Cash to the Partners sufficient to cover the
federal, state and local income tax owing by the Partners as a result of
Partnership allocations of income, gain, loss, deduction and credit to the
Partners[.]@[5] Thus, the Agreement contemplates, at
a minimum, annual distributions tied into the amount of the partnership=s net income, if any.  In addition,
appropriate discovery should reveal the timing and amount of past
distributions, facts that may offer insight into the predictability of future
distributions.  Moreover, St. Laurent=s inability to predict the precise
timing of the partnership=s distributions of its assets does not mean that the net
present value of his interest in those income-generating assets is
incalculable.  See, e.g., State v. Whataburger, Inc., 60 S.W.3d 256, 262
(Tex. App.CHouston [14th Dist.] 2001, pet. denied) (discussing valuation of
income-generating property).

Thus, on
the record presented, St. Laurent did not prove that money damages could not compensate
him or that such damages are incapable of calculation.  Absent proof of an
irreparable harm, St. Laurent was not entitled to injunctive relief.  See
SRS Prods. Co. v. LG Eng=g Co., 994 S.W.2d 380, 386 (Tex. App.CHouston [14th Dist.] 1999, no pet.). 
Accordingly, we reverse the trial court=s order, dissolve the temporary
injunction, and remand.[6]

                                                                           III.

                                          Deposits into Court=s Registry








After
granting the temporary injunction, the trial court, citing its inherent
authority, also ordered North Cypress to deposit into the court=s registry any future distributions
attributable to St. Laurent.  In response, North Cypress asked us to issue a
writ of mandamus vacating the trial court=s order because the record does not
indicate that disputed funds are likely to be Alost or depleted,@ a requisite for the court=s order.  We agree, and conditionally
grant mandamus relief.

A.        Mandamus Standard of Review

Mandamus
relief may be available if the relator establishes a clear abuse of discretion
for which there is no adequate appellate remedy.  See In re Prudential Ins.
Co. of Am., 148 S.W.3d 124, 135B36 (Tex. 2004) (orig. proceeding). 
Although we will not disturb the trial court=s resolution of disputed fact
matters, a trial court has no discretion in determining what the law is or in
applying the law to the facts.  See Walker v. Packer, 827 S.W.2d 833,
839B40 (Tex. 1992) (orig. proceeding). 

B.        Evidence of ALoss or Depleting@ Funds

If there
is evidence that disputed funds are in danger of being Alost or depleted,@ a trial court, through its inherent
authority, may order a party to pay those funds into the court=s registry.  See Castilleja
v. Camero, 414 S.W.2d 431, 433 (Tex. 1967).  Here, however, the record
contains no such evidence.  Instead, the undisputed evidence suggests only that
the partnership may use the same bank account to fund several activities,
including the reinvestment of funds into the hospital=s physical plant.  By itself, that
evidence is insufficient to warrant the trial court=s order in this case.

During
the temporary-injunction hearing, St. Laurent testified that the hospital has
recently undergone capital improvements, including an expansion of the existing
structure and the construction of a separate professional building and parking
garage.  It appears that these capital improvements might be funded, at least
in part, from the partnership=s AAvailable Cash,@ the same source used to pay partner
distributions.  After reviewing these facts alone, the trial court concluded
that the hospital=s capital improvements are likely to deplete the funds
available to pay future distributions.  However, that legal conclusion is not
supported by the evidence, for two reasons.








First,
the funds in question have not been shown to be in danger of being Alost or depleted.@  Instead, the evidence suggests that
those funds are being reinvested in the hospital=s physical plant, a partnership
asset.  Thus, in the event St. Laurent prevails in the dispute over his
partnership distributions, his efforts to collect on that judgment would not be
limited solely to the hospital=s AAvailable Cash@ account.  See generally Tex.
Civ. Prac. & Rem. Code Ann. '' 31.001-.010 (Vernon 2008).  As St.
Laurent conceded during oral argument, the record contains no suggestion that
North Cypress is insolvent or otherwise unable to pay a potential judgment in
this case. 

Second,
even were we to hold that reinvested funds qualify as Alost or depleted@ within the meaning of Castilleja,
the record is still insufficient to show that Available Cash is dwindling or
being depleted.  For example, the record is devoid of evidence about (1) the
balance of Available Cash, (2) the amount or source of the hospital=s revenue and net income used to fund
that account, (3) the monthly or annual cash flow in the Available Cash account
(4) the cost of the ongoing capital improvements, or (5) the extent, if any, to
which Available Cash may be dwindling because of the capital improvements.

Instead,
the record, particularly the Agreement, hints only that North Cypress uses the
Available Cash account for several purposes:

AAvailable Cash@ shall mean, at the time of determination, all Partnership cash
receipts derived from the conduct of the Partnership=s business reduced by (i) such amount as is necessary
to pay the current operating expenses and debt service of the Partnership, and
(ii) such reserves for the reasonable needs of the Partnership=s business as the General Partner shall determine, in
its sole discretion, including reserves for replacements, capital improvements
and additions.

 








Because the undisputed
evidence does not indicate that funds are actually in danger of being lost or
depleted, the trial court abused its discretion by ordering the payment of such
funds into its registry.  See Castilleja, 414 S.W.2d at 433; In re
Deponte Invs., Inc., No. 05-04-01781-CV, 2005 WL 248664, at *2 (Tex. App.CDallas Feb. 3, 2005, orig.
proceeding) (mem. op.).

Further,
we determine that, in this case, the benefits to mandamus review outweigh the
detriments.  See Prudential Ins. Co., 148 S.W.3d at 136.  Here, North
Cypress has been deprived of the use of its money without a showing either of
liability or an intent to hide assets from a possible judgment, as in Castilleja.[7] 
Therefore, we hold that North Cypress does not have an adequate remedy by
appeal.  See Deponte Invs., 2005 WL 248664, at *2.  Accordingly, we
conditionally grant mandamus relief.

                                                                            IV.

                                                                Conclusion

St.
Laurent has not shown that, in the absence of a temporary injunction, he would
suffer irreparable injury.  Therefore, we reverse the trial court=s ruling, dissolve the temporary
injunction, and remand for further proceedings not inconsistent with this
opinion. 

In
addition, we conditionally grant the petition for a writ of mandamus, and
direct the trial court to vacate its order compelling North Cypress to deposit
funds into the court=s registry.  We are confident the trial court will comply;
therefore, the writ will issue only in the unlikely event that it fails to do
so.

 

 

/s/      Kent C. Sullivan

Justice

 

 

Panel consists of Justices Seymore,
Brown, and Sullivan.









            [1]  This accelerated
appeal and mandamus proceeding were filed by North Cypress Medical Center Operating
Company, Ltd., the limited partnership, and North Cypress Medical Center
Operating Company G.P., L.L.C., the general partner.  Where necessary, we will
collectively refer to these entities as ANorth
Cypress.@





            [2]  Emphasis added.





            [3]  We note that, in
his pleadings, St. Laurent seeks to recover money damages for North Cypress=s alleged breach of contract.  That fact, considered
alone, suggests that the prospect of calculating such damages is not
insurmountable.





            [4]  See Coleman
v. Coleman, 170 S.W.3d 231, 241 (Tex. App.CDallas 2005, pet. denied).





            [5]  Emphasis added.





            [6]  Because of our
resolution of the accelerated appeal, we need not reach North Cypress=s alternative argument that the bond set by the trial
court, as a condition of the temporary injunction, was too low.





            [7]  Cf.
Castilleja, 414 S.W.2d at 433 (APetitioner
testified in the hearing on the writ of mandamus that he did not inten[d] to
satisfy the judgment . . . if the case was finally decided against him.@).