

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

#### NO. 02-13-00424-CV

RONALD G. BECKER AND                                   APPELLANTS
HAROLD SCOTT PERDUE

V.

BFE DEVELOPMENT CORP. D/B/A                            APPELLEES
BFE WATER COMPANY; AND
RICHARD BOURLAND

----------

## FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Ronald G. Becker and Harold Scott Perdue appeal the trial court's order granting BFE Development Corp. d/b/a BFE Water Company and Richard Bourland's (collectively, BFE) application for a temporary injunction. We affirm.

---

[1]See Tex. R. App. P. 47.4.

## Background Facts

Bourland is the owner of BFE Development and BFE Water Company. In 1998, BFE Development began developing a subdivision known as the Bourland Field Estates. BFE Development also began doing business as BFE Water Company as the exclusive water provider to the subdivision.

In 1999, Bourland formed the Bourland Field Estates Homeowners Association (the HOA). BFE Development executed the "Declaration of Covenants, Conditions, and Restrictions for Bourland Field Estates" (the CCRs). Under article IX of the CCRs, entitled "Construction and Improvements and Use of Lots," section 9.26 states, "The drilling of water[,] oil[,] and gas wells or extracting minerals by any means from any portion of the Property is prohibited." Article X, entitled "Architectural Control," creates an "architectural control committee,"[2] and subsection (d) of the article states, "[T]he Committee may, from time to time in its sole discretion, permit Owners to construct, erect[,] or install improvements which are in variance from the Covenants of the Restrictions which are provided in this Declaration . . . ."

In April 2013, Perdue, Becker, and eleven other lot owners filed variance requests with the committee seeking a variance from section 9.26's prohibition of water wells. The committee approved the variance requests in July 2013.

[2]The CCRs state that the committee may be comprised of either "three (3) or more individuals selected and appointed by [BFE Development]" or, under certain circumstances, by the HOA's board of directors. In this case, the committee was formed from members of the board.

Becker and Perdue filed applications for new water wells with the Upper Trinity Groundwater Conservation District on October 11, 2013, and were approved later that month. Both Becker and Perdue began drilling water wells soon after.

In November 2013, BFE sued Becker, Perdue, and the HOA for breach of contract, and it sought a declaratory judgment that the HOA was prohibited from granting variances to section 9.26 of the CCRs.[3] BFE requested that the HOA be enjoined from granting variances to section 9.26 and that Becker and Perdue be enjoined from drilling water wells on their property.

After a hearing, the trial court granted BFE's application for a temporary injunction. The order enjoined the HOA from granting variances to the prohibition against drilling water wells and enjoined Becker and Perdue from "continuing the drilling or operation of any water well already initiated on the Property" and from "extracting any groundwater and/or subsurface water from the Property." Becker and Perdue then filed this appeal.[4]

## Standard of Review

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor*

---

[3]BFE Development maintains that it has standing to file suit because it owns some of the lots in Bourland Field Estates. Bourland conceded in the trial court that he is not a property owner in the subdivision. BFE did not sue the other eleven lot owners that sought and received variances to drill water wells.

[4]The HOA did not appeal the temporary injunction against it and is not a party to this appeal.

3

*Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id.*

On appeal, we do not review the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978). Instead, we determine only whether there has been an abuse of discretion by the trial court in granting or denying the relief. *Id.* at 862. Given the abuse of discretion standard, we review the evidence submitted to the trial court in the light most favorable to the court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.). A reviewing court will not reverse an order on a temporary injunction unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The trial court does not abuse its discretion when basing its decision concerning a temporary injunction on conflicting evidence nor does it abuse its discretion when some evidence of substantive and probative character exists to support its decision. *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.).

## Discussion

In their sole issue on appeal, Becker and Perdue argue that the trial court abused its discretion by granting the temporary injunction enjoining them from

4

drilling or operating a water well on their property. Generally, to obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. However, a movant seeking a temporary injunction to enforce a restrictive covenant is not required to show proof of irreparable injury. *Guajardo v. Neece*, 758 S.W.2d 696, 698 (Tex. App.—Fort Worth 1988, no writ). Instead, the movant is only required to prove that the defendant intends to do an act that would breach the covenant. *Id.*

Becker and Perdue argue on appeal that because the CCRs grant the committee the power to grant variances to the water well restriction, BFE cannot as a matter of law prove a probable right to relief.[5] A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 559 U.S. 1036 (2010). BFE sued Becker and Perdue for breach of the CCRs and for a declaration that their wells were in breach of the CCRs. BFE's petition states that Becker and Perdue

---

[5]The parties do not dispute that Becker and Perdue knew of the restriction against water wells when they purchased their lots. *See Griffith v. Pecan Plantation Owners Ass'n*, 667 S.W.2d 626, 627 (Tex. App.—Fort Worth 1984, no writ) (stating that applicant seeking an injunction to enforce a restrictive covenant must show that the party to be enjoined bought the property with actual or constructive knowledge of the restrictive covenant).

breached the restrictive covenant prohibiting drilling water wells because the committee did not have the power to grant variances to the prohibition.

The variance-granting power is under article X of the CCRs, which is entitled "Architectural Control." Article X creates an "architectural control committee" that has the power to approve plans and specifications for "building[s], structure fence[s], wall[s,] or improvement[s] of any kind or nature" that are to be "erected, placed[,] or altered" on a lot owner's property. The committee must approve the

     i.  Quality of workmanship and materials;

     ii.  Adequacy of site dimensions; adequacy of constructural design; proper facing of main elevation with respect to nearby streets; conformity and harmony of the external design, color, type[,] and appearance of exterior surfaces and landscaping;

     iii.  Location with respect to topography and finish grade elevation and effect of location and use of neighboring Lots and improvements situated thereon and any drainage arrangement;

     iv.  The other standards set forth within the Declaration []and any amendments thereto, or as may be set forth within bulletins promulgated by the Committee on maters in which the Committee has been vested with authority to render a final interpretation and decision.

The bulletins that the committee may promulgate regard architectural standards. As to the bulletins, the article states,

     Although the Committee shall not have unbridled discretion with respect to taste, design[,] and any absolute standard specified herein, the Committee shall be responsive to technological advances or general changes in architectural designs and related conditions in future years and use its best efforts to balance the

equities between matters of taste and design (on the one hand) and use of private property (on the other hand).

The section of the CCRs that grants the committee the right to grant variances states,

> On submission of a written narrative request for same, the Committee may, from time to time in its sole discretion, permit Owners to construct, erect[,] or install improvements which are in variance from the Covenants of the Restrictions which are provided in this Declaration or which may be promulgated in the future. In any case, however, such variance shall be in basic conformity with and shall blend effectively with the general architectural style and design of Bourland Field Estates. . . . Each such written request must identify and set forth in narrative detail the specific restriction or standard from which a variance is sought and describe in complete detail the exact nature of the variance sought. Any grant of a variance by the Committee must be in writing and must identify in narrative detail both the standard from which the variance is being sought and the specific variance being granted.

In construing a restrictive covenant, a court's primary task is to determine the intent of the framers of the restrictive covenant. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987). "[O]ur goal is to determine whether the trial court was correct in finding that the objective intent of the covenant, or the intent expressed in the writing, was probably violated by the appellants' actions." *Munson v. Milton*, 948 S.W.2d 813, 816 (Tex. App.—San Antonio 1997, pet. denied). By designating the committee as an "architectural control committee" and by deeming its responsibilities to be to "balance . . . matters of taste and design" and to approve the "conformity and harmony of the external design, color, type[,] and appearance of exterior surfaces and landscaping" of improvements, the framers' apparent intent is to limit the authority of the

7

committee to control architectural decisions. That is, the committee's powers are not so broad so as to include the authority to grant variances to any covenant or restriction in the CCRs but are limited to the authority to grant variances that "permit Owners to construct, erect[,] or install improvements."[6] Restrictions that do not implicate such architectural decisions, such as the prohibitions against breeding livestock or poultry, discharging firearms, or conducting commercial enterprises on the property, do not appear to be within the purview of the architectural control committee. If, by way of example, the board amended the CCRs[7] to remove the prohibition against breeding livestock, the approval of variances for the pens, fences, or other housing for the animals would then rest with the architectural control committee. So too would the architectural decisions regarding the construction of any water wells should the well prohibition likewise be eliminated.

---

[6]Becker and Perdue argue that *La Ventana Ranch Owners' Ass'n. v. Davis*, 363 S.W.3d 632 (Tex. App.—Austin 2011, pet. denied), supports their assertion that the variances were proper under the language of CCRs. The variance provision in *La Ventana* stated that the architectural committee "may grant variances from compliance with *any* of the provisions of [the CCRs]." *Id.* at 638 (emphasis added). The provision at issue here permits variances only "to construct, erect[,] or install improvements [that] are in variance from the [CCRs]." Further, the ranch owners' association in that case did not argue that the variance provision did not extend to non-architectural covenants or restrictions. The *La Ventana* court held only that the variances in that case were not unauthorized waivers. *Id.* at 639.

[7]The CCRs provide that the covenants and restrictions may be amended by the board with the consent of 75% of all property owners.

Because the language of the CCRs tends to support a reading that the architectural control committee's variance-granting power does not extend to the prohibition against drilling or operating of a water well, the trial court did not abuse its discretion by finding that BFE had a probable right to the relief it sought against Becker and Perdue. The trial court likewise did not abuse its discretion by finding that Becker's and Perdue's drilling and operating of water wells therefore probably breached the restrictive covenant. *See Guajardo*, 758 S.W.2d at 698. The trial court therefore did not abuse its discretion by granting the temporary injunction. We overrule Becker and Perdue's issue.

## Conclusion

Having overruled Becker and Perdue's issue on appeal, we affirm the trial court's judgment.

/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DELIVERED: May 8, 2014

9