

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00346-CV

———————————————

EQUINE SPORTS MEDICINE & SURGERY WEATHERFORD DIVISION, PLLC, Appellant

V.

TYLER TIPTON, DVM, DACVS AND TIPTON EQUINE, LLC, Appellees

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV19-0408

Before Gabriel, Kerr, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

In this suit to enforce a covenant not to compete against a former employee, Equine Sports Medicine & Surgery Weatherford Division, PLLC appeals from the trial court's order denying its request to temporarily enjoin Tyler Tipton, DVM, DACVS from practicing veterinary medicine within a 50-mile radius of ESMS's Weatherford facility. Because ESMS failed to prove irreparable injury and the trial court thus did not abuse its discretion by denying ESMS injunctive relief, we affirm.

### Background

ESMS is an equine sports-medicine and surgery veterinary practice headquartered in Weatherford, Texas. Tipton—a licensed veterinarian since May 2009—was accepted into ESMS's equine-surgery residency program in June 2010 after completing a one-year internship at an equine hospital in Oklahoma. After Tipton completed his residency in June 2013, ESMS hired him to be an associate veterinarian. A year later, after taking his board examinations, Tipton left ESMS to practice veterinary medicine in Oklahoma.

Shortly after Tipton left, ESMS recruited him to return to ESMS as an associate veterinarian because Dr. Chris Ray, ESMS's highest-producing surgeon, announced that he was resigning from ESMS and moving to Montana. ESMS hired Tipton to "take over" Ray's cases. By this time, Tipton had been a veterinarian for five years and was a board-certified equine surgeon.

Upon Tipton's return in August 2014, he and ESMS entered into a one-year employment agreement that automatically renewed each year unless it was replaced by a new contract or terminated as provided in the contract. In August 2015, Tipton and ESMS entered into another employment agreement. As part of this agreement, ESMS agreed to provide Tipton with confidential information, and Tipton agreed not to disclose or use this information outside of his employment with ESMS:

> Upon [Tipton]'s execution of this Agreement, [ESMS] shall, and is obligated to, provide [Tipton] immediately with the right and ability to access certain confidential and proprietary information belonging to [ESMS], which is necessary for [Tipton] to perform [Tipton]'s duties under this Agreement. Such confidential and proprietary information includes, but is not limited to, information that is not readily available to the general public and which relates to or reflects [ESMS]'s business and its clients such as business and marketing plans, patient lists, software, case histories, client contact information, x-ray films and personal and regular patient files, price lists, and methods of operation (the "Confidential Information"). [Tipton] acknowledges that this Confidential Information constitutes valuable, special and unique property of [ESMS]. Except in accordance with [Tipton]'s job duties for [ESMS], [Tipton] shall not, unless first authorized by [ESMS] in writing, disclose or use any Confidential Information by any means whatsoever during the term of this Agreement or in the future. Upon the cessation of [Tipton]'s employment with [ESMS], [Tipton] shall promptly return all originals and all copies of the Confidential Information to [ESMS]. [Tipton]'s execution of this Agreement shall serve as an acknowledgment of [Tipton]'s receipt of Confidential Information. This Section shall survive the termination of this Agreement.

In exchange for ESMS's providing him with confidential and proprietary information, Tipton agreed he would not compete with ESMS for 18 months after his

3

employment ended within a 50-mile radius of any ESMS location at which he had

worked during the last 12 months of employment[1]:

> Ancillary to this otherwise enforceable Agreement, and in [ESMS]'s agreement to provide [Tipton] with Confidential Information which [ESMS] desires to protect: . . . during the period [Tipton] is employed by [ESMS] and for a period of eighteen (18) months thereafter,[2] [Tipton] shall not directly or indirectly, on [his] own behalf, on behalf of or with any other party, person or entity, including but not limited to, any relationship as a partner, joint-venturer, director, shareholder, owner, employee or independent contractor, market or provide services similar to the services which [ESMS] provides to its patients or customers at any location within 50 miles of any location, including any race track practices, in which [Tipton] has provided services for [ESMS] during the last twelve (12) months of [Tipton]'s employment by [ESMS] . . . . This provision shall survive the termination of this Agreement.

The employment agreement also provided for injunctive relief if Tipton

breached the covenant not to compete:

> [Tipton] agrees that [ESMS] shall be entitled to injunctions, both temporary and permanent, in addition to any other appropriate relief, at any time to prevent [Tipton] or others from violating, or cause [Tipton] to cease from violating, or to observe the agreements . . . pertaining to the protection of [ESMS]'s business, inasmuch as [Tipton] and [ESMS]

---

[1]Tipton's employment agreement also contained a nonsolicitation clause prohibiting him from soliciting or recruiting ESMS employees and independent contractors. ESMS has not alleged that Tipton has violated that provision.

Tipton's 2014 employment agreement with ESMS contained identical confidential-information, noncompetition, and nonsolicitation clauses. Tipton and ESMS had also entered into employment agreements with similar clauses before Tipton's residency and before his employment as an associate veterinarian in 2013.

[2]The noncompetition and nonsolicitation covenants included a tolling provision in which Tipton agreed that the 18-month time period would be extended "for an amount of time equal to the period during which [Tipton] is in breach."

agree that without such protection [ESMS]'s business would be irreparably harmed and the remedy of monetary damages or other remedies at law would be wholly inadequate and not readily ascertainable. [Tipton] acknowledges and stipulates that [ESMS] is entitled to any and all relief available to it under Texas law or the common law of the State of Texas (to the extent such actions by [Tipton] occur in Texas). . . . This provision shall survive the termination of this Agreement.

On March 23, 2018, Tipton notified ESMS that he was resigning from his employment, effective April 25, 2018. ESMS offered to let Tipton buy out his noncompete for $500,000. Tipton countered with $100,000, which ESMS rejected.

After leaving ESMS, Tipton formed Tipton Equine, LLC and became a mobile veterinarian, mainly working out of his vehicle and using space at veterinary clinics in Eastland and Whitesboro as needed. About two weeks after Tipton left ESMS, its board of directors heard that he was working at a ranch within 50 miles of ESMS's Weatherford facility. ESMS's CEO Kirk Eddleman called Tipton and asked if he had worked on horses at the ranch. Tipton admitted to treating the ranch's horses but told Eddleman that the horses had been hauled to Eastland (more than 50 miles from ESMS's Weatherford facility) and that he had treated them there.

After hearing more rumors that Tipton was working in the area, ESMS hired a private investigator in August 2018. The investigator followed Tipton several times but was unable to confirm that Tipton was working within 50 miles of ESMS's Weatherford facility. ESMS hired another private investigator who reported to ESMS in late November 2018 that Tipton was providing equine veterinary services within 50 miles of ESMS's Weatherford facility.

After interviewing several attorneys before retaining its current counsel, ESMS sued Tipton and Tipton Equine on April 1, 2019, to enforce the employment agreement, asserting a breach-of-contract claim against Tipton[3] and a tortious-interference claim against Tipton Equine.[4] ESMS pleaded for monetary damages and for declaratory and injunctive relief.[5] But ESMS did not ask for a temporary restraining order.

Over four months after ESMS filed suit, the trial court held an evidentiary hearing on ESMS's request for an order temporarily enjoining Tipton from competing with ESMS in violation of the noncompete clause.[6] Tipton testified, as did Dr. Martin J. Ivey (an ESMS owner and veterinarian); Dr. Laslo Hunyadi (an ESMS veterinarian); Dr. Chad Marsh (an ESMS veterinarian); Eddleman; Dawn Owens (a software specialist); Dr. Reese Hand (an ESMS owner and its chief medical officer); and Kody

---

[3]ESMS's breach-of-contract claim is limited to Tipton's alleged breach of the employment agreement's noncompete clause. ESMS does not allege that Tipton has breached the employment agreement's confidential-information or nonsolicitation clauses.

[4]ESMS later amended its petition to assert its breach-of-contract claim against Tipton Equine. Tipton Equine successfully moved under Rule 91a to dismiss that claim, as well as ESMS's tortious-interference claim. *See* Tex. R. Civ. P. 91a.

[5]ESMS initially pleaded for an injunction prohibiting Tipton from competing with ESMS, from soliciting or recruiting ESMS employees and contractors, and from using or disclosing ESMS's confidential information. ESMS's live pleading does not seek to enjoin Tipton from soliciting or recruiting ESMS employees and contractors.

[6]At the hearing, ESMS did not seek to enjoin Tipton from using or disclosing its confidential information.

Porterfield (a cutting-horse trainer). Eddleman testified that during Tipton's last 12 months of employment with ESMS, Tipton had provided services for ESMS at its Weatherford facility; at ranches in and around Parker and surrounding counties; at a racetrack in Ruidoso, New Mexico; and at shows in Fort Worth. Even though the noncompete as written would bar Tipton from working within 50 miles of each of these locations, Eddleman stated that ESMS was asking the trial court to reduce the noncompete area to 50 miles from just ESMS's Weatherford facility.

During the hearing, various ESMS witnesses testified that ESMS had trained Tipton, furnished him with confidential information, and provided him with ESMS's business goodwill by allowing him to take over treating Ray's patients. But according to Tipton, the information ESMS provided him was not confidential and the training he received at ESMS during his residency was not valuable, special, or unique. Tipton admitted to violating the noncompetition agreement within two weeks of leaving ESMS but claimed he did not recall signing his employment agreement and could not unequivocally say whether he had in fact signed it.

After a nearly day-long hearing, the trial court denied ESMS's temporary-injunction request and made separate findings of fact and conclusions of law ultimately concluding that ESMS had failed to prove (1) a substantial likelihood that it would prevail on the merits and (2) that it would suffer a probable, imminent, and irreparable injury in the interim. ESMS has appealed, *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4); Tex. R. App. P. 28.1, and raises six issues: (1) the trial court

7

abused its discretion by denying ESMS's temporary-injunction request; (2) the noncompete was enforceable because it was ancillary to or part of an otherwise enforceable agreement at the time the agreement was made; (3) the covenant not to compete contained reasonable limitations regarding time, geographical area, and scope of activity to be restrained; (4) the noncompete's tolling provision was valid and enforceable; (5) alternatively, the trial court abused its discretion by failing to reform the noncompete and to enforce it as reformed; and (6) Tipton's admitted breach of the noncompete caused probable, imminent, and irreparable harm for which ESMS has no adequate legal remedy.

**Standard of Review and Law Applicable to Temporary Injunctions**

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g). Its purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Clint ISD v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016). To obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied).

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. In determining whether the trial court

8

abused its discretion in granting or denying relief, we do not review the underlying case's merits. *See Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978). Under this standard, we review the evidence submitted to the trial court in the light most favorable to the trial court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.). We will not reverse a temporary-injunction order unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The trial court does not abuse its discretion when basing its temporary-injunction decision on conflicting evidence nor does it abuse its discretion when some evidence of substantive and probative character supports its decision. *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.).

## Analysis

Because ESMS's sixth issue—whether ESMS established a probable, imminent, and irreparable injury—is dispositive, we will address it first.[7] *See Butnaru*, 84 S.W.3d at

---

[7]The common law requires a showing of a probable, imminent, and irreparable injury as a prerequisite for injunctive relief. *Tranter, Inc. v. Liss*, No. 02-13-00167-CV, 2014 WL 1257278, at *7 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) (mem. op.). Although the Texas Business and Commerce Code preempts this requirement for permanent injunctive relief enforcing a covenant not to compete, a showing of probable, imminent, and irreparable injury is still required for temporary injunctive relief enforcing the covenant. *Id.*; *see* Tex. Bus. & Com. Code Ann. §§ 15.51, .52.

204. Our focus will be on the final component: whether Tipton's competing with ESMS would cause ESMS irreparable injury.[8] *See id.* An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any certain pecuniary standard. *Id.*; *Frequent Flyer Depot*, 281 S.W.3d at 220.

Relevant to irreparable harm, the trial court made the following findings and conclusions:

- "Proof that a highly trained employee is continuing to breach a non-competition covenant gives rise to a rebuttable presumption that the applicant is suffering irreparable injury."

- "Sufficient evidence was not presented at the hearing that Dr. Tipton was provided highly specialized training."

- "Sufficient evidence was not presented at the hearing that ESMS will suffer irreparable harm."

- "At the time of his departure, ESMS offered Dr. Tipton a buy-out of $500,000."

- "ESMS has permitted other departing veterinarians to buy out of their non-competes."

---

[8]In support of its request for injunctive relief, ESMS pleaded that it "does not have an adequate remedy at law because monetary damages alone are either impossible to calculate or will not sufficiently or adequately compensate [it] for its injuries and losses, including losses associated with [its] name, goodwill, prestige, and loss of current and prospective clients, patients, and trainers."

- "ESMS failed to put forth sufficient evidence that it would suffer a probable, imminent, irreparable injury in the interim."

ESMS argues that it established that Tipton's breach of the noncompete irreparably injured ESMS because Tipton failed to rebut the presumption that a highly trained employee's continued breach of a noncompete irreparably damages his employer. *See, e.g.*, *Tranter*, 2014 WL 1257278, at *7 ("A highly trained employee's continued breach of a noncompete agreement creates a rebuttable presumption that the employer is suffering an irreparable injury."). ESMS asserts that Tipton's use of ESMS's confidential information to compete with ESMS is inevitable and that the harm Tipton has caused cannot be measured with certainty. ESMS also points to Hand's testifying that it was not possible to quantify the damages Tipton's breach caused ESMS. ESMS asserts that this testimony is consistent with Tipton's representations in the employment contract that his breach of the noncompete would cause irreparable harm and that "the remedy of monetary damages or other remedies at law would be wholly inadequate and not readily ascertainable." Tipton counters that ESMS was not entitled to rely on the irreparable-harm presumption because ESMS did not provide Tipton with training in exchange for the noncompete, and that even if the presumption did apply, he rebutted that presumption with evidence of ESMS's $500,000 buy-out offer.

Regarding the buyout, Eddleman and Hand testified that after Tipton gave his 30-day resignation notice, ESMS's board offered to let Tipton buy out his

noncompete for $500,000. According to Eddleman, ESMS had allowed other veterinarians to buy out their noncompetes, and while the buyout in this case would not have "remedied everything" in terms ESMS's loss of revenue and goodwill, ESMS's board "was willing to accept a buyout to for[]go all this." Hand testified that he could not quantify ESMS's damages, but the board would have released Tipton from his noncompete for $500,000. He explained that the buyout offer was a board decision prior to Tipton's leaving and ESMS's involving legal counsel to "settle" the "situation."

ESMS argues that the buyout was a settlement offer and thus any evidence regarding the buyout was inadmissible to prove the amount of a disputed claim. *See* Tex. R. Evid. 408(a); *Vinson Minerals, Ltd. v. XTO Energy, Inc.*, 335 S.W.3d 344, 351 (Tex. App.—Fort Worth 2010, pet. denied) ("Offers of settlement are not admissible to prove liability or invalidity of a claim or its amount."). But ESMS did not object to any of the evidence regarding the buyout and has thus failed to preserve any error regarding its admissibility. *See* Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a)(1)(A); *Bechtel Corp. v. City of San Antonio*, No. 04-04-00910-CV, 2006 WL 228689, at *6 (Tex. App.—San Antonio Feb. 1, 2006, no pet.) (mem. op.).

Assuming without deciding that the irreparable-harm presumption applies here, we agree with Tipton that ESMS's $500,000 buyout offer was sufficient evidence to rebut that presumption because the buyout was some evidence that damages would adequately compensate ESMS and that its damages could be measured by a pecuniary

12

standard. As the party seeking injunctive relief, ESMS had the burden to prove irreparable injury. *See Lifeguard Benefit Servs., Inc. v. Direct Med. Network Sols., Inc.*, 308 S.W.3d 102, 111 (Tex. App.—Fort Worth 2010, no pet.). Damages attributable to a former employee's competition and appropriation of goodwill can be difficult to calculate. *See, e.g.*, *Tranter*, 2014 WL 1257278, at *9 (noting that "[i]n Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury" (quoting *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 569 (S.D. Tex. 2014))); *Frequent Flyer Depot*, 281 S.W.3d at 228 (stating that business disruption can be irreparable harm and that "assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy"). Here, Eddleman testified that the buyout would not have "remedied everything," and Hand testified that ESMS's damages could not be quantified. But they also testified that before Tipton left ESMS and started competing, ESMS was willing to release Tipton from his noncompete for $500,000, which the trial court could have concluded was a reasoned measure of ESMS's anticipated damages and would have adequately compensated ESMS for any damages caused by Tipton's competition. Because we must defer to the trial court's resolution of conflicting evidence, we conclude that the trial court could have concluded that ESMS failed to prove that it would suffer irreparable harm if Tipton was not enjoined from competing with ESMS.[9]

---

[9]As ESMS points out, for a covenant not to compete relating to the practice of

ESMS also points to Tipton's representations in his employment contract that his breach of the noncompete would cause irreparable harm and that "the remedy of monetary damages or other remedies at law would be wholly inadequate and not readily ascertainable." ESMS notes that this court "gives weight to an employee's contractual representations regarding irreparable harm and the inadequacy of money damages." *See Bellefeuille v. Equine Sports Med. & Surgery, Weatherford Div., PLLC*, No. 02-15-00268-CV, 2016 WL 1163364 (Tex. App.—Fort Worth Mar. 24, 2016, no pet.) (mem. op.). *Bellefeuille* involved an appeal from an order granting temporary injunctive relief. *Id.* at *1. Viewing the evidence in the light most favorable to the trial court's granting injunctive relief, we determined that the "trial court's findings, which were supported by the evidence adduced at the hearing, and Bellefeuille's

medicine to be enforceable against "a person licensed as a physician by the Texas Medical Board," the covenant must provide for a "buy out of the covenant by the physician at a reasonable price or, at the option of either party, as determined by a mutually agreed upon arbitrator or, in the case of an inability to agree, an arbitrator of the court whose decision shall be binding on the parties." Tex. Bus. & Com. Code Ann. § 15.50(b)(2); *see Greenville Surgery Ctr., Ltd. v. Beebe*, 320 S.W.3d 850, 853 (Tex. App.—Dallas 2010, no pet.) (concluding physicians' covenants not to compete were unenforceable because they did not contain a buyout clause). Of course, this enforceability requirement does not apply here because Tipton is not a physician. *See Greenville Surgery Ctr.*, 320 S.W.3d at 853 (noting that the statutory "buy-out clause requirement provides physicians with the unique opportunity to buy out their covenants that is not available to any other employee subject to a covenant"). Unsupported by any authority, ESMS states that "the existence of the statutory buyout requirement as a prerequisite for injunctive relief against a medical doctor demonstrates a buyout offer does not negate irreparable harm." But because a buyout provision is not a prerequisite to enforceability here, we see no reason why the trial court could not consider ESMS's $500,000 buyout offer as evidence of the damages ESMS anticipated it would suffer if Tipton were allowed to compete with ESMS.

acknowledgement of the necessity for injunctive relief in her residency agreement justif[ied] the trial court's conclusion that the failure to issue a temporary injunction would result in immediate and irreparable injury to ESMS." *Id.* at \*4 (footnote omitted).

ESMS has not pointed us to any case holding that the parties' agreement proves—for temporary-injunction purposes—that remedies at law will be inadequate or that any injuries suffered will be irreparable. *See Malone v. PLH Grp., Inc.*, No. 01-19-00016-CV, 2020 WL 1680058, at \*6 (Tex. App.—Houston [1st Dist.] Apr. 7, 2020, pet. denied) (mem. op.) (noting that "[t]rial courts are afforded discretion in granting equitable relief" and stating that "a contracting party's acknowledgment that the other contracting party has a right to equitable relief does not bind judicial actors or require a court to grant the equitable relief ultimately requested"); *Shoreline Gas, Inc. v. McGaughey*, No. 13-07-364-CV, 2008 WL 1747624, at \*11 & n.8 (Tex. App.—Corpus Christi–Edinburg Apr. 17, 2008, no pet.) (mem. op.) (noting that although contract stated that appellee's breach would cause appellant irreparable injury that could not be adequately compensated by money damages, appellant "pointed [the court] to no Texas case holding that an agreement such as this establishes, for injunction purposes, that remedies at law will be inadequate or that irreparable injury will necessarily be suffered"). Applying the applicable review standard to the trial court's order denying injunctive relief here, we conclude that although Tipton's employment contract might be some evidence of irreparable harm, the evidence regarding ESMS's

15

$500,000 buyout offer supports the trial court's denial of ESMS's request for temporary injunctive relief based on ESMS's failure to establish irreparable injury. *See Argo Grp. US, Inc. v. Levinson*, 468 S.W.3d 698, 702 (Tex. App.—San Antonio 2015, no pet.) (op. on reh'g) (stating that although contractual provision providing that employee's breach of noncompete clause might cause employer irreparable injury and that money damages would be inadequate "may be some evidence" that employee's breach might cause irreparable injury, "we must review the entire record, and we must do so in the light most favorable to the trial court's order denying the temporary injunction").

Because some evidence supports the trial court's conclusion that ESMS failed to prove irreparable injury, the trial court did not abuse its discretion by denying the temporary injunction. *See Midstate Envtl. Servs., LP v. Atkinson*, No. 13-17-00190-CV, 2017 WL 6379796, at *5 (Tex. App.—Corpus Christi–Edinburg Dec. 14, 2017, no pet.) (mem. op.) (citing *Butnaru*, 84 S.W.3d at 204). We overrule ESMS's sixth issue, along with its first, which generally contends that the trial court abused its discretion by denying ESMS's temporary-injunction request. We thus need not address ESMS's remaining issues.[10] *See* Tex. R. App. P. 47.1.

## Conclusion

Having overruled ESMS's dispositive issues, we affirm the trial court's order.

---

[10]To be clear, we are expressing no opinion on the merits of ESMS's claims against Tipton.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  October 22, 2020